FILED
CLERK, U.S. DISTRICT COURT

DEC - 6 2010

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**COPY**

1  STROOCK & STROOCK & LAVAN LLP
   JULIA B. STRICKLAND (State Bar No. 083013)
2  MARCOS D. SASSO (State Bar No. 228905)
   A. R. KACHADOORIAN (State Bar No. 240601)
3  2029 Century Park East, Suite 1800
   Los Angeles, California  90067-3086
4  Telephone: 310-556-5800
   Facsimile: 310-556-5959
5  lacalendar@stroock.com

6  Attorneys for Defendant
     CITIGROUP INC.

7

8

9           **UNITED STATES DISTRICT COURT**

10          **CENTRAL DISTRICT OF CALIFORNIA**

11             **WESTERN DIVISION**

12

13  MARJORIE RAND,                    )   Case No. **CV10  9358  PA  AJWx**
                                      )
14          Plaintiff,                )
                                      )   **NOTICE OF REMOVAL**
15      vs.                           )
                                      )   **(Pursuant to 28 U.S.C. §§ 1331,**
16  SEARS HOME IMPROVEMENT            )   **1441(b), 1446 – Federal Question)**
    PRODUCTS, INC.; ELIA DE CUNTO;    )
17  VILLANUEVA CONSTRUCTION &         )
    HOME REMODELING, INC. dba         )
18  VILLANUEVA HEATING & AIR          )
    CONDITIONING; SAFECO              )
19  INSURANCE COMPANY;                )
    AMERICAN CONTRACTORS              )
20  INDEMNITY COMPANY;                )
    CITIGROUP INC., and DOES 1 through)
21  100,                              )
                                      )
22          Defendants.               )
                                      )
23

24

25

26

27

28

                        NOTICE OF REMOVAL

LA 51338599

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086

1  **TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL**

2  **DISTRICT OF CALIFORNIA:**

3      **PLEASE TAKE NOTICE THAT,** pursuant to 28 U.S.C. §§ 1331, 1441(b),

4  and 1446, defendant Citigroup Inc. ("Citigroup"), hereby removes the action entitled

5  <u>Rand v. Sears home Improvement Products, Inc., et al.</u>, Los Angeles County

6  Superior Court Case No. BC440455 (the "Action"), to the United States District

7  Court for the Central District of California, on the following grounds:

8      1.   <u>Citibank's Removal Is Timely</u>.  Plaintiff Marjorie Rand ("Plaintiff")

9  served the Summons and Complaint by mail in the Action on or about October 27,

10  2010.  Because the Summons and Complaint were served by mail to an out-of-state

11  defendant, the service became effective ten days after mailing -- November 6, 2010.

12  <u>See</u> Cal. Civ. Proc. Code § 415.40.  The Complaint was the first pleading received by

13  Citigroup, through service or otherwise, setting forth the claims for relief upon which

14  the Action is based.  This Notice of Removal has been filed within the time permitted

15  to respond to the Complaint under California law and is therefore timely under 28

16  U.S.C. § 1446(b).  <u>See</u> <u>HMG Ben. Servs., LLC v. Fringe Ins. Benefits, Inc.</u>,

17  07cv1704 DMS (LSP), 2007 WL 3333115, at *2-3 (S.D. Cal. Nov. 7, 2007).  Copies

18  of the Summons and Complaint served on Citigroup in the Action are attached hereto

19  as composite Exhibit A.  In addition, attached hereto as composite Exhibit B is a

20  copy of the additional pleadings and orders served on Citigroup in the Action.

21      2.   <u>This Court Has Removal Jurisdiction Over This Action</u>.  The Action is a

22  civil action of which this Court has original jurisdiction under 28 U.S.C. § 1331 and

23  is one which Citibank may remove to this Court pursuant to the provisions of 28

24  U.S.C. § 1441(b) in that Plaintiff alleges violations of the federal Truth in Lending

25  Act, 15 U.S.C. §§ 1601, <u>et seq.</u> ("TILA") (<u>see</u> Complaint,¶¶ 168-171), claims that

26  are created by, and arise under, federal law.  Plaintiff seeks general damages,

27  statutory penalties, punitive and exemplary damages and attorneys' fees, purportedly

28  pursuant to TILA.  (<u>See</u> Complaint,¶ 171.)  To the extent any other claims in the

LA 51338599

1   Action arise under state law, including, but not limited to Plaintiff's claims for:

2   breach of contract, breach of the implied covenant of good faith and fair dealing,

3   breach of fiduciary duty, fraud, intentional infliction of emotional distress,

4   negligence, violation of California's Consumers Legal Remedies Act, recovery on

5   license bond, violation of California's Unruh Act -- all alleged against defendants

6   other than Citigroup -- arise under state law, supplemental jurisdiction over such

7   claims exists pursuant to 28 U.S.C. §§ 1367 and 1441(c).

8        3.    <u>All Defendants That Have Been Served Consent To Removal.</u>

9   Defendants Sears Home Improvement Products Inc. ("Sears"), Elia De Cunto ("De

10   Cunto"), Villanueva Construction & Home Remodeling, Inc., dba Villanueva

11   Heating & Air Conditioning ("Villanueva"), Safeco Insurance Company ("Safeco"),

12   and American Contractors Indemnity Company ("ACIC") consent to removal, and

13   therefore the Action is properly removed pursuant to 28 U.S.C. § 1446(a) & (b).  The

14   Notice of Joinder executed by defendants Sears, De Cunto and Safeco and the emails

15   confirming consent by defendants Villanueva and ACIC are attached hereto as

16   composite Exhibit C.

17        4.    <u>Notice Has Been Effected.</u>  A copy of this Notice of Removal is being

18   filed with the Superior Court for the State of California for the County of Los

19   Angeles and concurrently served on Plaintiff's counsel of record and all defendants'

20   counsel of record.

21   Dated:  December 6, 2010        STROOCK & STROOCK & LAVAN LLP

22                                 JULIA B. STRICKLAND

23                                 MARCOS D. SASSO
                              ALEXANDRIA KACHADOORIAN

24

25                By:  _____

26                        Alexandria Kachadoorian

27                   Attorneys for Defendant
                CITIGROUP INC.

28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086

LA 51338599

# EXHIBIT A

RECEIVED CBSD

NOV 2 - 2010

OFFICE OF THE GENERAL COUNSEL

## SUMMONS
### (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Sears Home Improvement Products, Inc.; Elia De Cunto; (See Additional Parties Attachment)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Marjorie Rand

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JUL 02 2010

John A. Clarke, Executive Officer/Clerk
By _____ Deputy
GINA GRIDER

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*  Stanley Mosk Courthouse - Central

111 North Hill Street
Los Angeles, CA 90012

CASE NUMBER:
*(Número del Caso):*
**BC 440455**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Suzanne E. Rand-Lewis, Esq. for Gary Rand & Suzanne E. Rand-Lewis, Professional Law Corporations

DATE: July 2, 2010       Clerk, by _____, Deputy
*(Fecha)*       John A. Clarke *(Secretario)*       GINA GRIDER *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

JUL 02 2010

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☑ on behalf of *(specify)*: Citigroup Inc.

   under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
          ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
American LegalNet, Inc.
www.FormsWorkflow.com

| SHORT TITLE: | | SUM-200(A) |
|---|---|---|
| Radn v. Sears Home Improvement Products, Inc., et al. | CASE NUMBER | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff      ☑ Defendant      ☐ Cross-Complainant      ☐ Cross-Defendant

Villanueva Construction & Home Remodeling, Inc. dba Villanueva Heating & Air Conditioning; Safeco Insurance Company; American Contractors Indemnity Company; Citigroup, Inc., and DOES 1 through 100;

Page _____ of _____

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

American LegalNet, Inc.
www.FormsWorkflow.com

1 | Gary Rand & Suzanne E. Rand-Lewis,
Professional Law Corporations
2 | Suzanne E. Rand-Lewis, Esq. (SBN 126219)
5990 Sepulveda Boulevard Suite 330
3 | Sherman Oaks, California 91411
(818) 779-1720
4

5 | Attorney for Plaintiff Marjorie Rand

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

**JUL 02 2010**

John A. Clarke, Executive Officer/Clerk
By _____ Deputy
GINA GRIDER

6

7

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | FOR THE COUNTY OF LOS ANGELES - CENTRAL DISTRICT

10

11 | MARJORIE RAND;

12 |     Plaintiff,

13 | vs.

14 | SEARS HOME IMPROVEMENT
PRODUCTS, INC.; ELIA DE CUNTO;
15 | VILLANUEVA CONSTRUCTION &
HOME REMODELING, INC. dba
16 | VILLANUEVA HEATING & AIR
CONDITIONING; SAFECO INSURANCE
17 | COMPANY; AMERICAN
CONTRACTORS INDEMNITY
18 | COMPANY; CITIGROUP, INC., and
DOES 1 through 100;
19
20 |     Defendants.

**BC 440455**

CASE NO.

**COMPLAINT**

1. Breach of Contract;
2. Breach of the Implied Covenant of Good Faith and Fair Dealing;
3. Breach of Fiduciary Duty;
4. Fraud - Lack of Intent;
5. Fraud - Failure to Disclose;
6. Fraud - Negligent Misrepresentation;
7. Intentional Infliction of Emotional Distress;
8. Negligence;
9. Violation of Consumer Legal Remedies Act [Civil Code §1750, *et seq*;
10. Violation of Business & Professions Code §17200, *et seq*;
11. Recovery on License Bond - Sears;
12. Recovery on License Bond - DelCunto;
13. Recovery on License Bond - Villanueva;
14. Violation of the Unruh Act; and
15. Violation of the Truth in Lending Act.

21

22

23

24

25 | Plaintiff alleges as follows:

26 | <u>PRELIMINARY ALLEGATIONS</u>

27 | 1. Plaintiff, MARJORIE RAND (hereinafter referred to as "Plaintiff"), is an individual

28 | residing at all times relevant herein, in the County of Los Angeles, State of California who is and

1
COMPLAINT

1  was at all relevant times herein over the age of 65.

2      2.  Defendant SEARS HOME IMPROVEMENT PRODUCTS, INC. (hereinafter referred to

3  as Defendant "SHIP") is a Corporation licensed to do business in the State of California and City of

4  Los Angeles.  SHIP is a general contractor and HVAC specialist, operating for profit in the State

5  of California and licensed under the laws of the State of California, CSLB number 721379.  SHIP

6  was required to provide a Bond for the protection of the public.  SHIP provided a Bond, Bond

7  number 6375369, to Defendant VILLANUEVA at all relevant times herein.

8      3.  Defendant ELIA DE CUNTO (hereinafter referred to as Defendant "ELIA") is an

9  individual and an employee and/or agent of Defendant SHIP, working and doing business in and

10  about the State of California and City of Los Angeles; and a licensed Home Improvement

11  Salesperson for Defendant SHIP.

12      4.  Defendant VILLANUEVA CONSTRUCTION & HOME REMODELING, INC. dba

13  VILLANUEVA HEATING & AIR CONDITIONING (hereinafter referred to as Defendant

14  "VILLANUEVA") is a California Corporation licensed to do business in the State of California and

15  City of Los Angeles.  Defendant VILLANUEVA is a general contractor operating for profit in the

16  State of California and licensed under the laws of the State of California, CSLB number 917216.

17  VILLANUEVA was required to provide a Bond for the protection of the public.  VILLANUEVA

18  provided a Bond, Bond number 100047773, at all relevant times herein.

19      5.  Defendant SAFECO INSURANCE COMPANY (hereinafter referred to as Defendant

20  "SAFECO") is and at all times mentioned herein was engaged in the business of insurance and of

21  guaranteeing and acting as a surety on bonds and undertakings required by the laws of the State of

22  California, licensed to do and primarily doing business in the State of California, and City of Los

23  Angeles

24      6.  Defendant AMERICAN CONTRACTORS INDEMNITY COMPANY (hereinafter

25  referred to as Defendant "ACIC") is and at all times mentioned herein was engaged in the business

26  of guaranteeing and acting as a surety on bonds and undertakings required by the laws of the State

27  of California, licensed to do business in the State of California and City of Los Angeles

28      7.  Defendant CITIGROUP, INC. (hereinafter referred to as Defendant "CITI") is and at all

1  times mentioned herein was engaged in the business of extending consumer credit for which a

2  finance charge is or may be imposed, providing credit cards and/or credit lines to consumers for

3  purposes of financing home improvement projects through Defendant SHIP and others, and

4  operating for profit in Los Angeles County, State of California.

5      8.  Plaintiff is ignorant of the true names and capacities of Defendants designated herein as

6  "Does 1 to 100" and therefore sues such Defendants by such fictitious names.  Plaintiff will seek

7  leave of court to amend her complaint when their true identities are ascertained.

8      9.  Plaintiff believes and thereon alleges that each of the Defendants, named or unnamed,

9  were acting as agents, servants, employees and/or representatives of other Defendants, named or

10  unnamed, and were acting in the course and scope of their authority, service, employment and/or

11  representative capacity at the time of the alleged acts and/or omissions complained of herein, and

12  that each of them was in some manner responsible for the damage and/or harm caused to Plaintiff.

13  **FACTUAL ALLEGATIONS**

14      10.  On or about June 2008, Plaintiff, a female who was over the age of 65 years old,

15  responded to an advertisement for a new heater and air conditioner from Defendant SHIP, and for

16  installation of same.  Plaintiff called Defendant SHIP and spoke with Defendant SHIP's agent,

17  Defendant ELIA, about the ad.  Plaintiff expressed her need of an air-conditioning system and

18  furnace for her two story home located at 12460 Rochedale Lane, Los Angeles, California 90049

19  (hereinafter referred to as the "property").  Plaintiff advised Defendant ELIA that the second floor

20  of the home was already ducted and that there was a closet on the second floor to house a new

21  HVAC unit for the upstairs.

22      11.  Thereafter, Defendant ELIA inspected Plaintiff's property for purposes of selling

23  Plaintiff an HVAC system from Defendant SHIP, and installation of same. Defendant ELIA assured

24  Plaintiff that the ducts in Plaintiff's home were sufficient to provide heat and air for the entire two

25  story home. Defendants ELIA and SHIP bid the job for $8,800.00, and advised Plaintiff that the cost

26  had to be financed through a SEARS credit line.  Plaintiff relied on Defendant ELIA's assurances

27  and entered into an agreement for the purchase, installation and finance of the HVAC system on or

28  about July 9, 2008.  Defendants SHIP and ELIA did not provide Plaintiff with any documents or

1   information concerning the credit line, annual percentage rate, or any other costs associated with the

2   financing of the HVAC system and its installation.

3        12. Thereafter, following the inspection of the property by Defendant ELIA, Defendant ELIA

4   advised Plaintiff that asbestos removal was required prior to the installation of the HVAC unit.

5   Plaintiff hired a professional asbestos company who removed asbestos from the property on or about

6   the first week of July 2008. Plaintiff advised Defendant ELIA of the asbestos removal and requested

7   the installation of the HVAC system proceed. As Defendant ELIA was only a salesperson, without

8   Plaintiffs knowledge or consent, Defendant SHIP contracted with Defendant VILLANUEVA for the

9   actual installation of the HVAC system.

10       13. On or about July 11, 2008, Defendant VILLANUEVA installed Defendant SHIP's

11  HVAC system. Defendant VILLANUEVA did not inspect the property to determine if the HVAC

12  unit was suitable or sufficient. Defendant VILLANUEVA installed the HVAC system without

13  testing the unit to ensure it worked properly. Plaintiff tested the HVAC system and discovered that

14  the unit did not cool or heat the second story of the property. Plaintiff contacted Defendant

15  VILLANUEVA and asked why the second story of the property did not receive either cool or warm

16  air through the HVAC system. Defendant VILLANUEVA contacted Defendant ELIA regarding

17  Plaintiff's complaint, who then called Plaintiff and told her that Defendant VILLANUEVA did not

18  know that the second floor ducting was not connected to the existing ducting and unit. Defendant

19  ELIA told Plaintiff to purchase a second unit for the second story of the property. Plaintiff contacted

20  Defendant VILLANUEVA and asked why the HVAC system did not heat or cool the second story

21  of the property. Defendant VILLANUEVA responded that the first floor air-ducts were not

22  connected to the second-floor air-ducts. Defendant VILLANUEVA refused to explain why the ducts

23  were not tested prior to installation; why the HVAC system was not tested after installation or why

24  Defendant ELIA did not advise Plaintiff of same after her initial inspection. Defendant

25  VILLANUEVA advised Plaintiff the installation was complete and left the property. However,

26  Defendant VILLANUEVA did not reinstall register covers as required to do, thereby leaving the job

27  unfinished.

28       14. On or about August 29, 2008, Plaintiff met with Defendants ELIA and VILLANUEVA

1   and requested Defendants remedy and install an HVAC system that would sufficiently cool and heat

2   the home as promised. Defendants ELIA and VILLANUEVA confirmed that the HVAC system

3   installed by VILLANUEVA did not heat or cool the second story of the property. Defendants gave

4   Plaintiff a choice: either purchase a second unit for the second story of the property, or connect the

5   upstairs ducting, by way of laying ducting on top of the roof of the property, all at Plaintiffs cost.

6   Plaintiff was shocked and distressed at this apparent bait and switch.  Plaintiff advised Defendants

7   that she expected Defendants to remedy and correct the problem.

8        15.  Thereafter, on or about August 29, 2008, Defendant ELIA contacted Plaintiff and faxed

9   Plaintiff an estimate for the work to be performed to ensure the second story of the property was

10  serviced by the HVAC system.  Defendants demanded Plaintiff pay additional costs for to install

11  the new ductwork and or new unit.

12       16.  Because of Defendant's failure to provide the goods and services promised, and their

13  violations of the Business and Professions Code, on or about September 15, 2008, Plaintiff submitted

14  a Complaint to the Contractor's State License Board reporting Defendants SHIP and ELIA's

15  violations and requesting assistance.  Plaintiff also retained legal counsel and an HVAC expert to

16  assist her. Plaintiff's expert inspected the property at Plaintiff's cost and provided a report indicating

17  the violations and necessary remediation. Plaintiff forwarded same to Defendants.

18       17.  On or about September 18, 2008, Plaintiff and/or her representatives notified the

19  Defendants of actionable conduct under California Civil Code Sections 1770(a)(2), (3), (5), (7), (9),

20  (13), (14), (16), (18) and (19) and demanded remedy.

21       18.  On or about October 1 and 2, 2008, Plaintiff's Counsel was promised by Michele

22  Compston of Defendant SHIP that work to correct the problem with the HVAC system not heating

23  or cooling the second story of the property was authorized and that work would commence shortly.

24       19.  In reliance on SHIP's promise, On or about October 3, 2008, Plaintiff and her counsel

25  met with SHIP's contractor at the property to begin the repair process. However, the man that arrived

26  was not authorized to do the work and was only there to do a cursory visual inspection. Defendant

27  SHIP's contractor inspected the property and told Plaintiff that he agreed with her contractor, that

28  another unit was needed to cool the upstairs and that no one who bid the job could possibly believe

1   that the unit installed was sufficient. Defendant SHIP's contractor did not perform any work,

2   inspected the property and submitted a bid to Defendant SHIP for the work required, contrary to

3   Defendant SHIP's prior representation to Plaintiff that the work was authorized and would be

4   performed.

5          20.  On or about October 7, 2008, Plaintiff's Counsel contacted Defendant SHIP by email

6   because the work Defendant SHIP had promised to perform and had indicated had been authorized

7   had not occurred. Defendant SHIP did not respond.

8          21.  On or about October 8, 2008, Plaintiff's counsel sent a second request to Defendant

9   SHIP by email for an update on the work Michele Compston of Defendant SHIP indicated had been

10  authorized and would be performed.

11         22.  On or about October 8, 2008, Michele Compston of Defendant SHIP contacted

12  Plaintiff's counsel by email and advised that she would be "discussing" the matter with "senior

13  management" as well as management in the local Los Angeles South office, and would be "in touch"

14  with Plaintiff's counsel. This was a continuing breach of her prior agreement to remedy.

15         23.  On or about October 8, 2008, Plaintiff's counsel again contacted Michele Compston of

16  Defendant SHIP by email reiterating that Defendant SHIP had confirmed in writing that all repairs

17  were approved, that Compston refused to provide a copy of Defendant SHIP's contractor's scope and

18  estimate, that Plaintiff had relied upon Defendant SHIP's written confirmation that repairs were

19  approved, that Defendant SHIP's delay was causing Plaintiff to incur attorney's fees, requesting the

20  name and telephone number of "senior management," advising that A/C units and ducting are not

21  allowed on the roof of Plaintiff's property due to the fact that the property is located in an

22  "architecturally controlled" community, that the unit was not supposed to be placed on the roof and

23  Plaintiff was never told that it was going to be installed on the roof, requesting a copy of any permit

24  that was pulled for the work, and advising that the register cover was removed and not replaced.

25         24.  On October 9, 2008, Plaintiff's counsel sent another email to Michelle Compston of

26  Defendant SHIP advising that due to Defendant SHIP's lack of response and breach of its agreement

27  to repair, Plaintiff would proceed to file suit.

28         25.  On October 10, 2008, Plaintiff's counsel sent another email indicating still no response

1   from Defendant SHIP.

2        26. On October 13, 2008, Plaintiff's counsel sent another email indicating still no response

3   from Defendant SHIP, and amending Plaintiff's CLRA notice to add Defendant SHIP's breach of

4   its agreement to repair. Plaintiff continued to follow up with the CSLB as to Defendants violations.

5        27. On October 14, 2008, Michelle Compston of Defendant SHIP sent an email to Plaintiff's

6   counsel advising she did give approval for Defendant SHIP's contractor to repair any issues related

7   to the installation, that she had discussed Defendant SHIP's contractor's findings with "senior/upper"

8   management, and had spoken with Plaintiff's contractor regarding his proposal. Ms. Compston

9   further stated she needed to meet with upper management and go through the "proper channels" to

10  get approval for the repairs on Plaintiff's contractor's proposal. This was a continuing breach of her

11  prior agreement to remedy.

12       28. That same date Plaintiff's counsel sent a email to Michelle Compston of Defendant SHIP

13  advising she was still waiting for the name and telephone number of "upper management," that

14  Defendant SHIP's delay is outrageous, and that obtaining authorization for Plaintiff's contractor's

15  repairs should have been obtained weeks ago when Plaintiff's counsel first requested it. Plaintiff's

16  counsel noted that Defendant SHIP's contractor's assessment was that a second unit needed to be

17  installed on the roof, that the register covers needed to be replaced, in addition to replacement of the

18  missing register cover that Defendant VILLANUEVA removed. Plaintiff's counsel noted that she

19  had nothing showing a permit was ever pulled, that Plaintiff had agreed with Defendant SHIP's

20  contractor's assessment and Compston represented that Defendant SHIP would be doing the repairs.

21  Plaintiff's counsel repeated her request for Defendant SHIP's contractor's assessment, scope and

22  estimate, and again advised that Plaintiff continued to incur attorney's fees for the work Plaintiff's

23  counsel was required to do on the file.

24       29. On October 15, 2008, Plaintiff's counsel sent another email to Michele Compston of

25  Defendant SHIP confirming Compston's telephone conversation with Plaintiff's contractor wherein

26  Plaintiff's contractor had no idea Compston was calling because she was seeking approval of his

27  proposal, reiterating that Defendant SHIP was in breach of its agreements and advising that any

28  remediation taken by Defendant SHIP would not result in a Release of all claims. Plaintiff's counsel

1  advised that if Defendant SHIP wanted to negotiate a complete Release it had until thirty-five days

2  from the receipt of Plaintiff's CLRA letter to do so.

3      30.  That same date, Plaintiff's counsel received an email from Rachel Cheek of Defendant

4  SHIP. Ms. Cheek claimed to be Ms. Compston's supervisor, further claimed to have been the person

5  who spoke with Plaintiff's contractor over the telephone, and promised that she wished to resolve

6  the matter as quickly as possible. This was untrue.

7      31.  On October 17, 2008, Plaintiff's counsel sent an email to Michele Compston of

8  Defendant SHIP stating Defendant SHIP had already agreed to repair, that no repair or specific

9  proposal for the repair had been provided, that Defendant SHIP had yet to explain why its contractor,

10  Defendant VILLANUEVA, left the job with no heat or air conditioning to the upstairs, no register

11  cover, no permit and no disclosure to the owner, that Defendant SHIP's salesperson did nothing to

12  fix the problem, but instead demanded more money from Plaintiff, a classic bait and switch.

13      32.  On October 20, 2008, Rachel Cheek of Defendant SHIP sent an email to Plaintiff's

14  counsel advising that Defendant SHIP would follow the recommendations of Plaintiff's contractor

15  for the repairs of the HVAC system, and that Defendant SHIP would require one of its authorized

16  contractors to review the scope of work and conduct an onsite inspection to confirm the accuracy of

17  Plaintiff's contractor's proposal. Cheek indicated that Defendant SHIP's offer to perform the repair

18  at no additional cost was being done as a gesture of customer service, and that she did not wish to

19  turn the matter into a fact finding or blame placing matter. This was a continuing breach of her prior

20  agreement to remedy.

21      33.  Plaintiff's counsel responded to Rachel Cheek by email that same date advising that

22  Defendant SHIP' own contractor had already performed an on site inspection and advised Plaintiff's

23  counsel that he had reviewed Plaintiff's contractor's scope and indicated same was fine. Plaintiff's

24  counsel inquired why Defendant SHIP now required another inspection, which was outrageous, and

25  the only thing left to do was authorize and pay for the work. Plaintiff's counsel noted that she had

26  advised Michelle Compston a month earlier to contact Plaintiff's contractor and authorize the work,

27  that Cheek could have verbally authorized the work when she spoke with him on the telephone, and

28  that Defendant SHIP still had not authorized the work. Plaintiff's counsel requested Defendant SHIP

forward the appropriate contract to her and Plaintiff's contractor and arrange payment to him immediately so that the work could be started.  Plaintiff's counsel also noted Defendant SHIP refused to do the repair work recommended by its own contractor, refused to provide a copy of said contractor's scope to Plaintiff, continued to fail to comply with its contractual obligations and promises, and failed to explain how Defendant VILLANUEVA could have walked off the job with no heat or air to the upstairs of the property.  Plaintiff's counsel also advised that the cover for the return that had been removed and not replaced by Defendant VILLANUEVA still needed to be replaced, and that the work Defendant SHIP already agreed to perform still remained undone. Plaintiff's counsel again advised that the repair would not result in a full Release of all claims.

34.   On October 23, 2008, Plaintiff's counsel sent another email to Rachel Cheek of Defendant SHIP noting no response and no repair, no telephone call and no reply to Plaintiff's counsel's email. Plaintiff's counsel further advised that due to the heat and smoky conditions air conditioning is essential, that Plaintiff's contractor is awaiting approval, payment or escrow so work could proceed.

35.   That same date, Plaintiff's counsel received an email from Rachel Cheek of Defendant SHIP asking whether Plaintiff's contractor had advised Plaintiff's counsel that he had encouraged Defendant SHIP to do the work itself, and asking whether there was any problem with Defendant SHIP doing the work. This was a continuing breach of the prior agreement to remedy.

36.   On October 27, 2008, Plaintiff's counsel responded by email to Rachel Cheek of Defendant SHIP reiterating that the original agreement was that Defendant SHIP's contractor would prepare a scope and estimate and would do the work, that Plaintiff allowed Defendant SHIP's contractor to come out to the property, Plaintiff's counsel met him there, and he verbally told Plaintiff's counsel what he was going to do.  Plaintiff's counsel reminded Cheek that she had Defendant SHIP's written confirmation that its contractor was authorized to do the repair, which was the only reason why Plaintiff allowed him to come out to the property.  Plaintiff's counsel advised that when she called Defendant SHIP's contractor and asked for the scope and estimate as promised, he advised that Defendant SHIP refused to allow him to send it to Plaintiff's counsel, and when Plaintiff's counsel asked Cheek to provide it, same was refused.  Plaintiff's counsel stated that

1   Defendant SHIP could not possibly be waiting for anything from Plaintiff, that Plaintiff's counsel
2   had repeatedly asked for the specific written scope and estimate so the work could be done, and that
3   the only thing Plaintiff asked for was that the work be performed by a qualified, licensed, bonded
4   professional.

5      37.  On October 27, 2008, Rachel Cheek of Defendant SHIP sent an email confirming that
6   Defendant SHIP would do the work, indicating the scope would be the same as what Plaintiff's
7   contractor proposed minus the new system, stating she would have the name of the installer the
8   following afternoon, and requesting dates and times that would be convenient to Plaintiff for the
9   work to be completed.

10      38.  On October 28, 2008, Plaintiff's counsel sent another email to Rachel Cheek of
11   Defendant SHIP advising that she would need the information on the licensed contractor, would need
12   a written scope of work, estimate and written agreement from Defendant SHIP with its guarantee of
13   payment so that no possible mechanics lien could be placed on the property if Defendant SHIP did
14   not pay the installer.  Plaintiff's counsel also inquired whether Cheek was aware that the scope of
15   the work she was proposing required the use of a licensed roofer, and fabrication of ductwork.
16   Plaintiff's counsel advised that she would need to meet with the contractor doing the work at the
17   property, that it would be her second such meeting since Defendant SHIP refused to use its first
18   contractor, advised what her hourly rate was, and again reiterated that the remediation would not
19   result in a release of all claims, including attorney's fees and costs that Defendant SHIP had forced
20   Plaintiff to incur.  Finally, Plaintiff's counsel reiterated that everything had been agreed to a month
21   earlier, that Defendant SHIP was refusing to use Plaintiff's contractor and to do the work
22   recommended by its own contractor because Defendant SHIP refused to install a second unit which
23   both contractors had determined was required.

24      39.  That same date, Plaintiff's counsel received an email from Rachel Cheek of Defendant
25   SHIP in response indicating that if Plaintiff wished to use her own contractor to do the work she
26   could do so, and Cheek would authorize payment of $3,750.00 to Plaintiff's counsel so that Plaintiff
27   could pay her contractor and have him do the work.

28      40.  On October 29, 2008, Plaintiff's counsel sent an email to Rachel Cheek of Defendant

SHIP advising yet again that Plaintiff had always stated she would accept the recommended $4,250.00, repair which Plaintiff's counsel had confirmed with Defendant SHIP's contractor was low, that Plaintiff's contractor had confirmed the price was still available even though his bid had expired, that the month of delay and need for Plaintiff's counsel's involvement had cost Plaintiff fees, contractor's costs, and discomfort due to the heat and smoke in the second level of the property. Plaintiff's counsel requested that Cheek confirm in writing and send a check for $4,250.00 via federal express that date so that the work could be started and the matter taken care of.

41.   That same date, Plaintiff's counsel received an email from Rachel Cheek of Defendant SHIP in response stating that the check amount is $3,750.00, and if the amount had changed there would be a problem, that she had confirmed with Plaintiff's contractor that his price was still good and the work could be done for that, and advising that a check could not be sent federal express that date as Defendant SHIP had moved their accounting department to India and it would take at least a week to get a check issued, even with a rush. This was a continuing breach of her prior agreement to remedy.

42.   Plaintiff's counsel responded via email to Rachel Cheek of Defendant SHIP on October 29, 2008, asking her to read the original estimate and Plaintiff's counsel's email, advising that Plaintiff was not requesting anything different than day one, that the repair recommended by Defendant SHIP's contractor and Plaintiff's contractor was the $4,250.00 installation of a second unit in the second story closet where the ducts end, which ducts would have been seen at the time the job was bid. Plaintiff's counsel requested that Cheek advise if Defendant SHIP was refusing to pay the $4,250.00 and would only pay $3,750.00 in mitigation, and also when the monies would be transmitted.

43.   On October 29, 2008, Rachel Cheek of Defendant SHIP sent an email to Plaintiff's counsel inquiring whether the repairs that Plaintiff's contractor suggested for the price of $3,750.00 would still be needed. This was a continuing breach of her prior agreement to remedy.

44.   On October 30, 2008, Rachel Cheek of Defendant SHIP sent an email to Plaintiff's counsel advising that Defendant SHIP had received a letter from its Surety Company advising that Plaintiff had placed a claim against the bond, and asking whether that was how Plaintiff was seeking

the repair amount of $3,750.00. This was a continuing breach of her prior agreement to remedy.

45. Plaintiff's counsel responded to Rachel Cheek of Defendant SHIP via email that same date advising that Defendant SHIP's contractor agreed that the $4,250.00 repair should be done, that the $3,750.00 is not part of that repair and is not needed as the new unit is placed into the close and hooked up to the existing ducting. Plaintiff's counsel further advised that she had explained this to Michelle Compston, and that Defendant SHIP's contractor had already inspected and explained it, and the repair had been agreed to in writing. Plaintiff's counsel also asked about the return cover, and requested written confirmation of when payment would be received and when the return cover would be replaced be sent via facsimile.

46. On October 30, 2008, Rachel Cheek of Defendant SHIP sent an email to Plaintiff's counsel stating she had agreed to repairs to connect the ductwork, not install a new unit, and to Plaintiff's contractor doing the repairs. Cheek indicated that if the agreement was to install a second unit, there was no reason why one of Defendant SHIP's authorized contractors could not do the work, and for less than Plaintiff's contractor. Cheek advised that Defendant SHIP would agree to install a second unit to local codes and industry standards, no ductwork included, provided Plaintiff closed the claim on the bond, and further that Defendant SHIP would make no further repairs or service to the unit already installed. This was a continuing breach of her prior agreement to remedy.

47. On October 31, 2008, Plaintiff's counsel sent an email to Rachel Cheek of Defendant SHIP advising that Defendant SHIP needed to keep its agreement, that Defendant SHIP's contractor who had inspected should do the work he recommended, or Defendant SHIP should pay Plaintiff the $4,250.00 so her contractor could do the work with no further delay. Plaintiff's counsel advised the offer would stay open until 5:00 p.m. PST on Monday, November 3, 2008, that she had repeatedly advised Cheek that Plaintiff would not accept any conditions or provide Defendant SHIP with a Release, and that Defendant SHIP's placing conditions on its latest offer was outrageous and unacceptable.

48. That same date, Rachel Cheek of Defendant SHIP replied via email to Plaintiff's counsel. Cheek asserted that Defendant SHIP had done nothing wrong, and agreed to pay compensation only because it was the best solution for all parties. Cheek further indicated that she

---

had no intention of cancelling the offer to install the second unit, but that she would not make the concession without Plaintiff's withdrawing her claim. Cheek closed her email by advising Plaintiff's counsel to call her at any time to discuss the matter, provided her telephone number, then stated she was out of the office that date, thus making herself unavailable. At no time did Cheek ever make herself available by phone nor did she ever call or formally write counsel. This was a continuing breach of her prior agreement to remedy.

49. On October 31, 2008, Plaintiff's counsel responded to Cheek's email via email. Plaintiff's counsel noted that Cheek had never been in when Plaintiff's counsel called, and advised that Plaintiff's counsel had made it very clear that Defendant SHIP could choose to mitigate, but that any offer was not going to be for a full release. Plaintiff's counsel reiterated that Plaintiff never offered to accept $3,750.00 as a final settlement, that all attorney's fees and costs would be recovered by Plaintiff, and that the longer the matter was dragged out by Defendant SHIP the more it would cost to everyone involved. Plaintiff's counsel closed by advising that Plaintiff's offer would remain open until Monday at 5:00 p.m., even though same had already been rejected.

50. On November 3, 2008, Rachel Cheek of Defendant SHIP sent an email to Plaintiff's counsel indicating that the offer was made to install a second unit, with Defendant SHIP doing the installation. Cheek further advised that Defendant SHIP had no problem "eating" the additional cost of the second installation, and expected Plaintiff's counsel to do the same. Cheek indicated the offer would remain open until 5:00 p.m. that date, at which time it would become null and void and unenforceable. This was a continuing breach of her prior agreement to remedy.

51. Plaintiff's counsel sent an email in response on November 3, 2008, to Rachel Cheek of Defendant SHIP stating that the work should be done and that Plaintiff had been waiting over a month for Defendant SHIP to do it. Plaintiff's counsel noted that Cheek made the offer, yet failed to provide any details, and that Plaintiff needed the name of the contractor, the contractor's CSLB license number, Bond information, permits, and liability and workers' compensation insurance, all of which needed to list Plaintiff as an additional insured. Plaintiff's counsel advised she wanted to see the contract and payment guarantee so that no mechanics lien could be filed, and requested same be provided that day so the work could be scheduled that day.

52. On November 3, 2008, Rachel Cheek of Defendant SHIP responded via email asking Plaintiff's counsel whether she was agreeing that no additional repairs were needed, and that the installation would be full and final. Cheek indicated she would be happy to draft a simple release agreement for Plaintiff's counsel's review. Cheek agreed to supply Plaintiff's counsel with Defendant SHIP's information, its bond, CSLB number, but refused to provide any contractor's information claiming same exceeded the scope of their contract as written. Cheek indicated that since the work was being done as a "concession" it is an add on to the original contract and that Defendant SHIP is the general contractor in regard to that contract. This was a continuing breach of her prior agreement to remedy.

53. Plaintiff's counsel responded by email November 3, 2008, reiterating that she had unequivocally and repeatedly stated in numerous emails that Defendant SHIP needed to mitigate, that the work was not a full settlement, and that there would not be a release. Plaintiff's counsel advised that Plaintiff had accepted Defendant SHIP's offer, which was not conditioned on a Release or anything else, and that Cheek had again reneged. Plaintiff's counsel stated that only a California licensed, bonded HVAC contractor with sufficient liability and workers compensation insurance would be allowed on the property, and asked what reason Cheek could have for refusing to identify the contractor who would be doing the work. Plaintiff's counsel noted that saying Defendant SHIP is the general contractor is meaningless as the work required a valid California HVAC license. Plaintiff's counsel also requested confirmation that Defendant SHIP did not intend to use the same contractor, Defendant VILLANUEVA, who did not do the job properly in the first place.

54. That same date, Rachel Cheek of Defendant SHIP responded by email stating that while Plaintiff's acceptance may not be contingent on a release, Defendant SHIP's offer "is and always has been," that no one was refusing to identify the contractor, and accusing Plaintiff's counsel of placing restrictions on who can or cannot do the work. Cheek indicated that Defendant SHIP's final offer was to install a second system at no cost to Plaintiff by an installer of Defendant SHIP's choice, who would meet all local requirements to do business according to local guidelines as well as those required by Defendant SHIP. Cheek further stated that Defendant SHIP would need a written agreement that specifies exactly what is being done, that it would be at no cost to Plaintiff, and that

1   the other repairs would not be needed.  Cheek claimed this was necessary since it was a change to

2   the contract, and is being done as a concession. This was both untrue and a continuing breach of her

3   prior agreement to remedy.

4        55.  On November 4, 2008, Plaintiff's counsel sent an email to Rachel Cheek of Defendant

5   SHIP again noting that Defendant SHIP already agreed to repair, no release or other agreement was

6   required, that Plaintiff already accepted, and that she was awaiting the written estimate and scope

7   of work from Defendant SHIP's licensed contractor, certificates of insurance, etc. Plaintiff's counsel

8   further noted that she was making a record of Defendant SHIP's breaches and unreasonable conduct,

9   and reminded Cheek that Defendant SHIP's conduct was causing fees which are recoverable by

10  Plaintiff.  Plaintiff's counsel noted that Cheek had refused to provide a scope and estimate, and

11  refused to proceed with the work which at all times was only being accepted to allow Defendant

12  SHIP to mitigate.  Plaintiff's counsel reiterated that no other terms were ever part of the offer, that

13  Plaintiff had consistently states no release would be provided, and that Defendant SHIP's insistence

14  on a Release is a breach of its promise, and unreasonable under the circumstances.

15       56.  On November 4, 2008, Rachel Cheek of Defendant SHIP sent Plaintiff's counsel an

16  email accusing her of changing the scope of Plaintiff's demands, stating Defendant SHIP agreed to

17  repairs to the work already done not a new install, but did not agree to provide Plaintiff with

18  additional insured status or anything similar to that as it is not necessary, and that once the parties

19  had an agreed upon plan, Defendant SHIP would proceed. This was a continuing breach of her prior

20  agreement to remedy.

21       57.  Plaintiff's counsel responded by email that same date to Rachel Cheek of Defendant

22  SHIP again stating that the offer was accepted.  Plaintiff's counsel further stated that the details of

23  how Defendant SHIP's contractor will do the work and assurances that the contractor is insured have

24  nothing to do with the offer and its acceptance as certificates of insurance, scope, estimates and

25  licensure are all part of what Defendant SHIP's contractor has to provide on a job.

26       58.  On November 5, 2008, Rachel Cheek of Defendant SHIP sent an email to Plaintiff's

27  counsel asserting that Defendant SHIP is the General Contractor on the job, the contract is with it,

28  and that it was Defendant  SHIP's responsibility to ensure that their authorized installer meets all

local and state requirements to perform the work. Cheek indicated that Defendant SHIP would be happy to provide the name of the installer so that Plaintiff's counsel could pull all the information herself, and that listing Plaintiff as an additional insured is above the scope of the contract. Cheek indicated that Defendant SHIP's offers had expired the day before, but that if Plaintiff's counsel responded with Plaintiff's agreement to sign a release for the additional work Defendant SHIP would move forward with the work. This was a continuing breach of her prior agreement to remedy.

59. Later that same date, Rachel Cheek of Defendant SHIP sent another email indicating that she had received a second estimate in the amount of $2,300.00 for the repairs to the unit that had already been installed. Cheek claimed that the contractor indicated the unit installed was the proper size for the entire house, and that the costs include connecting the first and second floor ducting so that the single unit could heat and cool the entire house.

60. On November 5, 2008, Plaintiff's counsel sent another email to Rachel Cheek of Defendant SHIP requesting yet again for a copy of the scope, estimate, and name of the licensed HVAC contractor.

61. That same date, Rachel Cheek of Defendant SHIP responded via email stating that until final agreement was reached there was no need to supply Plaintiff's counsel with any information regarding an installation. This was a continuing breach of her prior agreement to remedy.

62. On or about October 20, 2008, Defendant ACIC, through its claims agent HCC Surety Group, contacted Plaintiff's counsel and acknowledged receipt of Plaintiff's claim against Defendant VILLANUEVA's contractor's license bond. Defendant ACIC requested Plaintiff provide additional documentation regarding her claim including the purchase agreement, contract, and a contractor's estimate of the cost to properly complete the HVAC system installation.

63. On or about October 21, 2008, Plaintiff's counsel sent all requested documentation to Defendant ACIC. Plaintiff's counsel also informed Defendant ACIC that Defendant SHIP had confirmed Defendant VILLANUEVA's negligence in the installation, and demanded payment on the claim.

64. On or about October 29, 2008, Defendant ACIC, through its claims agent HCC Surety Group, acknowledged receipt of the documentation provided by Plaintiff, and advised that they were

1    analyzing same.  Defendant ACIC, through its claims agent HCC Surety Group, also advised that

2    a written decision would be provided "as soon as possible."

3        65.  On or about November 17, 2008, Defendant ACIC, through its claims agent HCC Surety

4    Group, advised Plaintiff's counsel that said Defendant required a copy of the original contract or

5    work order from Defendant VILLANUEVA, and that Defendant ACIC would require an additional

6    thirty (30) days to conclude its review of Plaintiff's claim.

7        66.  On or about December 10, 2008, Defendant ACIC, through its claims agent HCC Surety

8    Group, advised Plaintiff's counsel that the claims examiner who had been handling Plaintiff's claim

9    was no longer with HCC Surety Group, requested a copy of the original contract or work order from

10   Defendant VILLANUEVA, and advised that Defendant ACIC was extending consideration of

11   Plaintiff's claim an additional thirty (30) days.

12       67.  On or about December 17, 2008, Plaintiff's counsel advised Defendant ACIC, through

13   its claims agent HCC Surety Group, that Plaintiff had provided said Defendant with all necessary

14   documents on October 21, 2008, that the contract between Defendant SHIP and Plaintiff was

15   assigned by Defendant SHIP to Defendant VILLANUEVA, that Defendant ACIC needed to obtain

16   the contract directly from its insured, Defendant VILLANUEVA, that Plaintiff was incurring

17   attorney's fees and costs associated with the claim, and demanded payment of the claim as there was

18   no excuse for delay in the handling of the claim.

19       68.  On or about February 4, 2009, Defendant ACIC, through its claims agent HCC Surety

20   Group, contacted Plaintiff's counsel and claimed not to have received any response to its previous

21   letters, requesting Plaintiff provide proof of Defendant VILLANUEVA's involvement in the matter,

22   and advising they were extending their consideration an additional thirty (30) days.

23       69.  On or about March 6, 2009, Defendant ACIC, through its claims agent HCC Surety

24   Group, confirmed that it had spoken with Defendant VILLANUEVA, that Defendant

25   VILLANUEVA denied any responsibility for Plaintiff's claim, and advised that Defendant ACIC

26   had hired a construction consultant to review the file and assist in concluding the claim.

27       70.  On or about March 19, 2009, an industry expert from the Contractors State License

28   Board conducted an inspection of the property, and of the HVAC system that Defendants SHIP and

1  ELIA had recommended for installation, and that Defendant VILLANUEVA had installed.

2      71. On March 23, 2009, the Contractors State License Board's industry expert submitted a

3  written report to Plaintiff and the Contractors State License Board, which report determined that the

4  work performed at the property did not meet accepted standards for good and workmanlike

5  construction. Specifically, the report noted that the HVAC system recommended by Defendants

6  SHIP and ELIA, and installed by Defendant VILLANUEVA, had insufficient cooling capacity for

7  the property, and did not meet acceptable standards of the industry. The report further noted that

8  "the contractor did not heat and cool the second floor of the home."

9      72. On or about March 24, 2009, Defendant ACIC, through its claims agent HCC Surety

10  Group, provided Plaintiff's counsel with the name and contact information of Defendant ACIC's

11  construction consultant, and requested Plaintiff's counsel contact him directly to discuss the matter.

12      73. On or about March, 2009, Plaintiff's counsel spoke with Defendant ACIC's construction

13  consultant regarding Plaintiff's claim. Defendant ACIC's construction consultant did not ask any

14  questions about the claim. Rather, he stated he had done a lot of research, that Plaintiff had no direct

15  privity with his client, and that his client only installed equipment.

16      74. On or about March 27, 2009, Plaintiff's counsel sent a demand for immediate payment

17  by credit holder under warranty, final CLRA notice, demand for payment under bond, and demand

18  for payment under Sears warranty, warranty contract and assurance of "satisfaction guaranteed."

19  Plaintiff's counsel reiterated the facts of the matter, and attached a copy of the report from the

20  Contractors State License Board's industry expert which found the work performed at Plaintiff's

21  property did not meet accepted standards for good and workmanlike construction.

22      75. That same date, Plaintiff's counsel sent Defendant ACIC, through its claims agent HCC

23  Surety Group, a letter advising that all necessary documents for the claim had been provided on

24  October 21, 2008, and again on December 17, 2008; that the contract between Defendant SHIP and

25  Plaintiff was assigned by Defendant SHIP to Defendant VILLANUEVA, and that Defendant ACIC

26  had the contract in its possession; that Defendant VILLANUEVA did not inspect the job, installed

27  a patently insufficient HVAC system, improperly installed same on the roof of Plaintiff's property,

28  removed register covers and did not replace them as it was required to do, and knowingly left the job

1  only partially completed. Plaintiff's counsel enclosed a copy of the Contractors State License

2  Board's report of Business and Professions Code violations, advised that Plaintiff's estimates,

3  attorney's fees, costs, loss of use, and damages for distress exceed the maximum amount of the bond,

4  and demanded immediate payment on the bond. Plaintiff's counsel further noted that there was no

5  excuse for delay in the handling of Plaintiff's claim.

6      76.  On or about April 2, 2009, Defendant ACIC, through its claims agent HCC Surety

7  Group, notified Plaintiff's counsel that it was extending its consideration of Plaintiff's claim an

8  additional thirty (30) days in anticipation of receipt of its consultant's report.

9      77.  On or about April 15, 2009, Defendant ACIC, through its claims agent HCC Surety

10  Group, acknowledged receipt of the Contractors State License Board report, enclosed a copy of the

11  report from its construction consultant, and advised that the CSLB report had been sent to its

12  construction consultant to see if the CSLB findings would change his review.

13      78.  On April 21, 2009, over seven (7) months after Plaintiff submitted her claim, Defendant

14  ACIC, through its claims agent HCC Surety Group, sent a letter denying Plaintiff's claim.

15      79.  On or about December 10, 2009, the Contractors State License Board issued a citation

16  to Defendant SHIP for its violations of <u>Business and Professions Code</u> §§7109(a), and 7113.

17  Pursuant to said citations, Defendant SHIP was to pay civil penalties totaling $1,000.00, and to pay

18  Plaintiff the sum of $3,750.00, on or before January 4, 2010. To date, Defendant SHIP has failed

19  and refused to make any payment to Plaintiff.

20      80.  To date Defendants, and each of them, have refused and failed to remedy their failures.

21  Therefore, Plaintiff has no alternative but to bring this action.

22              **FIRST CAUSE OF ACTION**

23                **BREACH OF CONTRACT**

24      **(Against Defendants SHIP, ELIA, VILLANUEVA, and Does)**

25      81.  Plaintiff repeats and realleges all paragraphs of the preceding allegations herein and

26  incorporates said paragraphs as though set forth in full in this Cause of Action.

27      82.  Plaintiff and Defendants entered into a contract for the purchase and installation of an

28  HVAC system on or about July 9, 2008. Said contract is defined as a contract for goods and

services. The contract provides for the purchase of an HVAC system by Plaintiff, financed through Defendant CITI, and the installation of said HVAC system at the property located at 12460 Rochedale Lane, Los Angeles, California 90049. Further, the contract and agreement entered into by Plaintiff and Defendants called for the installation of an HVAC system that would service Plaintiff's two story property.

83. Plaintiff did each and every thing required of her to be done under the contract except for those things which the Defendants by their word, actions and/or deeds, would not permit Plaintiff to do.

84. Defendants, and each of them, breached the terms of the contract when they failed to honor the contract by not completing the work required, and installing an HVAC system that did not meet Plaintiff's needs, which fact was known to Defendants. Defendants purposefully concealed their true intentions at the time Plaintiff entered into the contract.

85. Defendants further breached the contract when they failed to hire competent and experienced contractors to evaluate and assess Plaintiff's property and perform the installation, so as to defeat the purpose of the contract and deprive Plaintiff of its benefits thereunder.

86. Defendant SHIP further breached the contract when it failed to perform additional work promised to fix the problem with the HVAC system, to Plaintiff's detriment.

87. As a direct and proximate result of the Defendants' breach of the contract/agreement, and concealment of their true intentions, Plaintiff has been forced to expend money out of her own pocket to remediate and temporarily repair the defective installation by Defendants.

88. As a direct and proximate result of the aforementioned breach by Defendants, Plaintiff has been deprived generally of benefits to which she was entitled pursuant to the contract and has suffered other incidental damages and out of pocket expenses, all to Plaintiff's general damage for a total amount to be shown at the time of trial in accordance with <u>Civil Code</u> §3300 and 3345.

## SECOND CAUSE OF ACTION

### BREACH OF THE IMPLIED COVENANT OF

### GOOD FAITH AND FAIR DEALING

### (Against Defendants SHIP, ELIA, VILLANUEVA, and Does)

89. Plaintiff repeats and realleges all paragraphs of the preceding allegations herein and incorporates said paragraphs as though set forth in full in this Cause of Action.

90. Implied in every contract there is an implied covenant of good faith and fair dealing which prohibits one of the parties to the contract from doing any act which would deprive the other party of the benefits of the contract.

91. The Defendants breached their duty of good faith and fair dealing owed to Plaintiff by their acts and/or omissions which included, but were not necessarily limited to the following conduct:

a) failure to adequately inspect and assess the property to ensure proper installation and operation of the HVAC system;

b) failure to hire contractors who had the technical staff required in order to perform the proper installation of the HVAC system;

c) failure to hire contractors who were sufficiently trained and/or knowledgeable in their professed area of expertise so as to be able to perform the installation in a professional and expeditious manner;

d) failure to communicate with Plaintiff regarding the installation, including advising Plaintiff of necessary work to ensure that the second story ducting is connected to the first floor ducting;

e) failure to make an adequate inspection of the premises, so as to "overlook" or neglect to find any major problems with the property that would render the HVAC system useless to Plaintiff;

f) failure to properly hire and supervise their own staff, so as to maintain and operate a competent office, which would act as intermediary between their own contractors and customers.

92. Plaintiff is informed and believes and thereon alleges that the Defendants have breached their duty of good faith and fair dealing owed to Plaintiff by other acts and/or omissions of which Plaintiff is presently unaware. Plaintiff will seek leave of court to amend this complaint at such time as she discovers the other acts and/or omissions of the Defendants which constituted such breach.

93. As a direct and proximate result of the aforementioned wrongful breach by the

1    Defendants, Plaintiff has been deprived of benefits to which she was entitled pursuant to the contract.

2         94.  As a further direct and proximate result of the aforementioned breach by the Defendants,

3    Plaintiff suffered anxiety, worry, anger, mental and emotional distress, and other incidental damages

4    and out of pocket expenses, all to Plaintiff's general damage for a total amount to be shown at the

5    time of trial.

6         95.  The Defendants' conduct as described herein was deceptive, fraudulent, and was

7    undertaken with a conscious disregard of Plaintiff's rights so as to entitle Plaintiff to punitive

8    damages.  Moreover, the Defendants denied benefits under the contact to Plaintiff, knowing Plaintiff

9    was entitled to such benefits.  The conduct of the Defendants rendered the contract illusory, as it was

10   impossible for Plaintiff to obtain the benefits of the contract due to the Defendants' acts and/or

11   omissions as more particularly described herein above. The Defendants' conduct as described herein

12   was undertaken with a conscious disregard of Plaintiff's rights, based upon said Defendants' greed

13   and superior bargaining power, and with the intent to vex, injure and annoy Plaintiff so as to

14   constitute malice, fraud or oppression pursuant to_California Civil Code_ §3294.  Such conduct

15   entitles Plaintiff to punitive damages in an amount appropriate to deter such conduct and statutory

16   damages pursuant to California Civil Code §3345.

17                              **THIRD CAUSE OF ACTION**

18                              **BREACH OF FIDUCIARY DUTY**

19              **(Against Defendants SHIP, ELIA, VILLANUEVA, and Does)**

20        96.  Plaintiff repeats and realleges all paragraphs of the preceding allegations herein and

21   incorporates said paragraphs as though set forth in full in this Cause of Action.

22        97.  Defendants, and Does 1 through 100, and each of them, created a fiduciary relationship

23   between themselves and Plaintiff and said fiduciary relationship existed at all relevant times herein.

24        98.  Defendants and Does 1 through 100, have breached their fiduciary duty owed to Plaintiff

25   by the acts and omissions set forth herein above, including their patent and negligent

26   misrepresentations.

27        99.  Plaintiff alleges that as a result of the breach of fiduciary duty by Defendants and Does

28   1 through 100, Plaintiff has suffered anxiety, worry, anger, mental and emotional distress, and other

1   incidental damages and out of pocket expenses, all to Plaintiff's general damage for a total amount

2   to be shown at the time of trial.

3       100.   The Defendants' conduct as described herein was undertaken with a conscious

4   disregard of Plaintiff's rights, based upon said Defendants' greed and superior bargaining power, and

5   with the intent to vex, injure and annoy Plaintiff so as to constitute malice, fraud or oppression

6   pursuant to California Civil Code §3294.  Such conduct entitles Plaintiff to punitive damages in an

7   amount appropriate to deter such conduct and statutory damages pursuant to California Civil Code

8   §3345.

9   ### FOURTH CAUSE OF ACTION

10   ### FRAUD - LACK OF INTENT TO PERFORM

11   **(Against Defendants SHIP, ELIA, VILLANUEVA, and Does)**

12       101.   Plaintiff repeats and realleges all paragraphs of the preceding allegations herein and

13   incorporates said paragraphs as though set forth in full in this Cause of Action.

14       102.   Defendants made certain promises to Plaintiff regarding various matters, as set forth

15   in the contract and otherwise, including, but not necessarily limited to the repeated promises by them

16   that they would inspect, install and/or correct any and all items under the contract, including the

17   HVAC system and ducting, in a competent and expeditious manner, without undue delay; that they

18   would provide prompt and accurate customer service, that the contract entered into by Plaintiff

19   would take care of any problems Plaintiff might have and provide Plaintiff with security and peace

20   of mind.

21       103.   The Defendants did not have any intent to perform the various promises made to

22   Plaintiff at the time when they were made.  Plaintiff believed that Defendant SHIP was a large,

23   reputable company, Defendant ELIA a competent and licensed contractor and employee/agent of

24   Defendant SHIP, qualified to conduct inspections and bid on projects, and that ELIA and the

25   contractor, Defendant VILLANUEVA, would comply with industry standards.  Based thereon,

26   Plaintiff justifiably relied on the facts and promises of said Defendants, to her detriment, including

27   not shopping for other retailers and/or contractors.  The Defendants did not disclose any contract

28   limitations at the time of purchase which would affect Plaintiff.

104. As a direct and proximate result of Defendants' conduct, Plaintiff has been deprived of benefits to which she was entitled pursuant to the contract.

105. As a further direct and proximate result of the aforementioned conduct by Defendants, and each of them, Plaintiff suffered anxiety, worry, anger, mental and emotional distress, and other incidental damages and out of pocket expenses, all to Plaintiff's general damage for a total amount to be shown at the time of trial.

106. The Defendants' conduct as described herein was deceptive, fraudulent, and was undertaken with a conscious disregard of Plaintiff's rights so as to entitle Plaintiff to punitive damages. The Defendants' conduct as described herein was undertaken with a conscious disregard of Plaintiff's rights, based upon said Defendants' greed and superior bargaining power, and with the intent to vex, injure and annoy Plaintiff so as to constitute malice, fraud or oppression pursuant to California Civil Code §3294.  Such conduct entitles Plaintiff to punitive damages in an amount appropriate to deter such conduct and statutory damages pursuant to California Civil Code §3345.

## FIFTH CAUSE OF ACTION

### FRAUD - FAILURE TO DISCLOSE

### (Against Defendants SHIP, ELIA, VILLANUEVA, and Does)

107. Plaintiff repeats and realleges all paragraphs of the preceding allegations herein and incorporates said paragraphs as though set forth in full in this Cause of Action.

108. Defendants, and each of them, were aware as of June 2008, that Plaintiff required the HVAC system to provide air to the entire property.  Defendants assured Plaintiff that the HVAC system would provide air to both the first and second floor of the property, and would be of sufficient capacity to properly heat and cool the entire property.  Plaintiff relied on Defendants' assurance and entered into a contract for the purchase of an HVAC system and installation of same, to her detriment.

109. These facts were material to Plaintiff's decision to enter into a contract with Defendants for the purchase and installation of the HVAC system and Defendants had knowledge of these facts. Defendants knew that the proposed/installed HVAC system was insufficient to provide air to both the first and second floor of the property without the need of a second unit, and/or additional ducting

1   or substantial modification to the ducting. Plaintiff had no knowledge of these facts, thus Defendants
2   had a duty to disclose said material facts to Plaintiff.

3       110. Defendants, and each of them, breached their duty to disclose material facts concerning
4   the property to Plaintiff by failing to advise Plaintiff of the fact that the proposed/installed HVAC
5   system was insufficient to provide air to both the first and second floor, and/or that additional
6   ducting or substantial modification to the ducting was required to connect the HVAC to the second
7   floor of the property.

8       111. Plaintiff was unaware in June 2008, and prior thereto, that the HVAC being purchased
9   and installed was insufficient to provide air to both the first and second floor of the property, or that
10  additional ducting or substantial modification of the ducting was required to connect the HVAC
11  system to the second floor of the property.

12      112. Plaintiff believed Defendant SHIP was a large and reputable company, Defendant ELIA
13  a competent and licensed contractor and employee/agent of Defendant SHIP, qualified to conduct
14  inspections and bid on projects, and VILLANUEVA to be a competent contractor, who would
15  apprize Plaintiff of any deficiencies in the HVAC system and/or ducting found in the course and
16  scope of inspecting and installing the HVAC system. Plaintiff likewise believed that any contractor
17  employed by SHIP to install HVAC systems for their customers would be competent and
18  professional, and apprize the homeowner of any deficiencies in the HVAC system and/or ducting
19  at the property. Based thereon, Plaintiff justifiably relied on Defendants' silence as to the services
20  and benefits afforded by the contract, as an indication that no such serious deficiencies existed at the
21  property, to her detriment.

22      113. As a direct and proximate result of the aforementioned breach by Defendants, and each
23  of them, Plaintiff suffered anxiety, worry, anger, mental and emotional distress, and other incidental
24  damages and out of pocket expenses, all to Plaintiff's general damage for a total amount to be shown
25  at the time of trial.

26      114. Defendants' conduct as described herein was deceptive, fraudulent, and was undertaken
27  with a conscious disregard of Plaintiff's rights so as to entitle Plaintiffs to punitive damages. The
28  Defendants' conduct as described herein was undertaken with a conscious disregard of Plaintiff's

1  rights, based upon said Defendants' greed and superior bargaining power, and with the intent to vex,

2  injure and annoy Plaintiff so as to constitute malice, fraud or oppression pursuant to California Civil

3  Code §3294.  Such conduct entitles Plaintiff to punitive damages in an amount appropriate to deter

4  such conduct and statutory damages pursuant to California Civil Code §3345.

## SIXTH CAUSE OF ACTION

### FRAUD - NEGLIGENT MISREPRESENTATION

**(Against Defendants SHIP, ELIA, VILLANUEVA, and Does)**

8  115.  Plaintiff repeats and realleges all paragraphs of the preceding allegations herein and

9  incorporates said paragraphs as though set forth in full in this Cause of Action.

10  116.  The Defendants made certain promises to Plaintiff regarding various matters, as set

11  forth in their advertisements, in the contract, and otherwise, including but not necessarily limited to

12  the repeated representations by Defendants that they would install an HVAC system capable of

13  providing service to the entire property, the first and second floor, and that the ducting in the home

14  was sufficient.  These representations were reiterated on numerous occasions by Defendants.

15  117.  Plaintiff believed Defendant SHIP was a large and reputable company, Defendant ELIA

16  a competent and licensed contractor and employee/agent of Defendant SHIP, qualified to conduct

17  inspections and bid on projects, and VILLANUEVA to be a competent contractor, who would

18  apprize Plaintiff of any deficiencies in the HVAC system and/or ducting found in the course and

19  scope of inspecting and installing the HVAC system.  Plaintiff likewise believed that any contractor

20  employed by SHIP to install HVAC systems for their customers would be competent and

21  professional, and apprize the homeowner of any deficiencies in the HVAC system and/or ducting

22  at the property.  Based thereon, Plaintiff justifiably relied on Defendants' silence as to the services

23  and benefits afforded by the contract, as an indication that no such serious deficiencies existed at the

24  property, to her detriment.

25  118. As a direct and proximate result of the aforementioned breach by Defendants, and each

26  of them, Plaintiff suffered anxiety, worry, anger, mental and emotional distress, and other incidental

27  damages and out of pocket expenses, all to Plaintiff's general damage for a total amount to be shown

28  at the time of trial.

119. Defendants' conduct as described herein was deceptive, fraudulent, and was undertaken with a conscious disregard of Plaintiff's rights so as to entitle Plaintiff to punitive damages. The Defendants' conduct as described herein was undertaken with a conscious disregard of Plaintiff's rights, based upon said Defendants' greed and superior bargaining power, and with the intent to vex, injure and annoy Plaintiff so as to constitute malice, fraud or oppression pursuant to California Civil Code §3294. Such conduct entitles Plaintiff to punitive damages in an amount appropriate to deter such conduct and statutory damages pursuant to California Civil Code §3345.

## SEVENTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against Defendants SHIP, ELIA, VILLANUEVA, and Does)

120. Plaintiff repeats and realleges all paragraphs of the preceding allegations herein and incorporates said paragraphs as though set forth in full in this Cause of Action.

121. At all times mentioned herein, Defendants, and each of them, knew that they were in a sensitive and superior economic position to Plaintiff and had the power and ability to damage Plaintiff's interests, economic and otherwise, by failing to act reasonably as a contractor and failing to honestly reveal the limitations of the HVAC system and/or ducting, failing to properly inspect, assess and/or install the proper HVAC system and/or ducting required, and by generally failing to complete the work as required by the contract and assurances.

122. Defendants, and each of them, knew that Plaintiff was susceptible to further harm and damage if Defendants, and each of them, acted recklessly or unreasonably in handling Plaintiff's claim. In doing and/or failing to do the things herein alleged, Defendants, and each of them, acted despicably, outrageously, fraudulently and intentionally in an attempt to deprive, and in fact depriving Plaintiff of benefits under the contract, and as more specifically set forth herein above.

123. Defendants' conduct was designed to cause Plaintiff severe emotional distress, or was performed with a conscious disregard for the high probability of causing such severe emotional distress.

124. As a direct and proximate result of Defendants', and each of their conduct, Plaintiff

1  suffered severe emotional distress, humiliation, anxiety, worry, anger and frustration and other

2  incidental damages and out of pocket expenses, all to Plaintiff's general damage for a total amount

3  to be shown at the time of trial.

4      125.  Defendants' conduct as described herein was deceptive, fraudulent, and was undertaken

5  with a conscious disregard of Plaintiff's rights so as to entitle Plaintiff to punitive damages. The

6  Defendants' conduct as described herein was undertaken with a conscious disregard of Plaintiff's

7  rights, based upon said Defendants' greed and superior bargaining power, and with the intent to vex,

8  injure and annoy Plaintiff so as to constitute malice, fraud or oppression pursuant to California Civil

9  Code §3294.  Such conduct entitles Plaintiff to punitive damages in an amount appropriate to deter

10  such conduct and statutory damages pursuant to California Civil Code §3345.

11                    **EIGHTH CAUSE OF ACTION**

12                         **NEGLIGENCE**

13      **(Against Defendants SHIP, ELIA, VILLANUEVA, and Does)**

14      126.  Plaintiff repeats and realleges all paragraphs of the preceding allegations herein and

15  incorporates said paragraphs as though set forth in full in this Cause of Action.

16      127.  At all times mentioned herein, Defendants, and each of them, knew that they were in

17  a sensitive and superior economic position to Plaintiff, and had the power and ability to damage

18  Plaintiff's interests, economic and otherwise, by failing to act reasonably as a contractor and failing

19  to honestly reveal the limitations to the HVAC system and/or ducting, failing to properly inspect,

20  assess and/or install the proper HVAC system and/or ducting required, and by generally failing to

21  complete the work as required by the contract and assurances.

22      128.  Defendants owed a duty to Plaintiff.  Said duty was created both by the contract and

23  by Defendants' affirmative conduct thereafter.  Defendants' further duty, pursuant to Civil Code

24  §1714, was to use ordinary care and skill in inspecting, estimating, recommending, and installing

25  Plaintiff's HVAC system. Defendants breached their duties through the conduct stated in the prior

26  Causes of Action including but not limited to:

27          a) failure to adequately inspect and assess the property to ensure proper installation

28  and operation of the HVAC system;

b) failure to hire contractors who had the technical staff required in order to perform the proper installation of the HVAC system;

c) failure to hire contractors who were sufficiently trained and/or knowledgeable in their professed area of expertise so as to be able to perform the installation in a professional and expeditious manner;

d) failure to communicate with Plaintiff regarding the installation, including advising Plaintiff of necessary work to ensure that the second story ducting is connected to the first floor ducting;

e) failure to make an adequate inspection of the premises, so as to "overlook" or neglect to find any major problems with the property that would render the HVAC system useless to Plaintiff;

f) failure to properly hire and supervise their own staff, so as to maintain and operate a competent office, which would act as intermediary between their own contractors and customers.

129. Defendants, and each of them, further knew that Plaintiff was susceptible to further harm and damage if Defendants, and each of them, acted recklessly or unreasonably in handling Plaintiff's claim. In doing and/or failing to do the things herein alleged, Defendants, and each of them, acted despicably, outrageously, fraudulently and intentionally in an attempt to deprive, and in fact depriving Plaintiff of benefits under the contract, and as more specifically set forth herein above.

130. As a direct and proximate result of Defendants', and each of their conduct, Plaintiff suffered severe emotional distress, humiliation, anxiety, worry, anger and frustration, and other incidental damages and out of pocket expenses, all to Plaintiff's general damage for a total amount to be shown at the time of trial.

### NINTH CAUSE OF ACTION

### VIOLATION OF CONSUMER LEGAL REMEDIES ACT

### (CIVIL CODE §1750, *ET SEQ.*)

### (Against Defendants SHIP, ELIA, VILLANUEVA, and Does)

131. Plaintiff repeats and realleges all paragraphs of the preceding allegations herein and incorporates said paragraphs as though set forth in full in this Cause of Action.

1    132. Plaintiff and/or her representative notified Defendants on or about September 18, 2008,

2    of their negligent acts under California Civil Code §1770(a)(2), (3), (5), (7), (9), (13), (14), (16), (18)

3    and (19), and demanded remedy. Defendants have a pattern and practice of bidding on certain

4    projects knowing that the customer's need will not be met under said bid and then selling additional

5    units and/or other items to rectify the problem, at the expense of the customer, and using contractors

6    who do not properly install, inspect and/or test the work performed, all to the detriment of Plaintiff

7    and others similarly situated.

8    133. Pursuant to the requirements of Civil Code §1780(c), Plaintiff states that this claim is

9    filed within Los Angeles County, wherein Plaintiff resides and all Defendants do business.

10    134. As a further direct and proximate result of the aforementioned breach by Defendants,

11    and each of them, and their failure to remedy same after being put on notice by Plaintiff of their

12    violations of Civil Code §1770(a)(2), (3), (5), (7), (9), (13), (14), (16), (18) and (19), Plaintiff

13    suffered anxiety, worry, anger, mental and emotional distress, attorneys fees and costs and other

14    incidental damages and out of pocket expenses, all to Plaintiff's general damage for a total amount

15    to be shown at the time of trial.

16    135.    Defendants' conduct as described herein was deceptive, fraudulent, and was

17    undertaken with a conscious disregard of Plaintiff's rights so as to entitle Plaintiff to punitive

18    damages, and all damages allowed by said statute. The Defendants' conduct as described herein was

19    undertaken with a conscious disregard of Plaintiff's rights, based upon said Defendants' greed and

20    superior bargaining power, and with the intent to vex, injure and annoy Plaintiff so as to constitute

21    malice, fraud or oppression pursuant to California Civil Code §3294. Such conduct entitles Plaintiff

22    to punitive damages in an amount appropriate to deter such conduct and statutory damages pursuant

23    to California Civil Code §3345.

24    **TENTH CAUSE OF ACTION**

25    **VIOLATION OF BUSINESS & PROFESSIONS CODE §17200, 17500**

26    **(Against Defendants SHIP, ELIA, VILLANUEVA, and Does)**

27    136. Plaintiff repeats and realleges all paragraphs of the preceding allegations herein and

28    incorporates said paragraphs as though set forth in full in this Cause of Action.

137.  In participating in the acts and omissions cited above, Defendants and each of them, participated in a deliberate, misleading and unfair scheme designed to defraud their customers.

138.  The enactment and perpetuation of this scheme constituted a fraudulent business practice, which incorporated a course of conduct that included, but was not limited to, unfair, deceptive, untrue and misleading statements and materials as more particularly set forth hereinabove.

139.  Defendants unfair competition instituted a practice which was designed to harm its customers and which was substantially likely to deceive the public.  The harm to Plaintiff and others far outweighed any benefit accruing to Defendants.

140.  Specifically, Defendants have a pattern and practice of bidding on certain projects knowing that the customer's need will not be met under said bid and then selling additional units and/or other items to rectify the problem, at the expense of the customer, and using contractors who do not properly install, inspect and/or test the work performed, all to the detriment of Plaintiff and others similarly situated.  Further, Defendants utilized certain contractors who were either incompetent or unqualified.  The Defendants marketed themselves to potential customers as being experienced, professional and qualified to assess a customer's HVAC needs and the installation of same.

141. Defendants' violations of California Business and Professions Code §17200 and 17500, are not limited to past acts by Defendants, but include present, ongoing and continuing violations.

142. As a further direct and proximate result of the aforementioned violations, Plaintiff has suffered anxiety, worry, anger, mental and emotional distress, and other incidental damages and out of pocket expenses, all to Plaintiff's general damage for a total amount to be shown at the time of trial. Defendants' acts resulted in profit to Defendants.  Plaintiff seeks restitution and disgorgement of said profits.  Plaintiff brings this action on her own behalf and on behalf of all others similarly situated as private attorney general, and seeks restitution and attorney's fees herein. The Defendants' conduct as described herein was undertaken with a conscious disregard of Plaintiff's rights, based upon said Defendants' greed and superior bargaining power, and with the intent to vex, injure and annoy Plaintiff so as to constitute malice, fraud or oppression pursuant to California Civil Code §3294. Such conduct entitles Plaintiff to punitive damages in an amount appropriate to deter such

1  conduct and statutory damages pursuant to California Civil Code §3345.

2  ## ELEVENTH CAUSE OF ACTION

3  ## RECOVERY ON CONTRACTOR'S LICENSE BOND

4  ### (Against Defendants DE CUNTO, SAFECO, and Does)

5  143.   Plaintiff repeats and realleges all paragraphs of the preceding allegations herein and

6  incorporates said paragraphs as though set forth in full in this Cause of Action.

7  144.   Defendant DE CUNTO was at all times mentioned herein an employee and/or agent

8  of Defendant SHIP and acting within said scope in dealing with Plaintiff.

9  145.   Defendant SHIP, as principle, and Defendant SAFECO, as surety, executed a

10  contractor's license bond for the purpose of complying with Business & Professions Code §§7071.5

11  and 7071.6 through 7084.  This bond in the sum of $12,500.00 was conditioned on, and provided

12  that if the original contractor, or any of its subcontractors, failed to complete, or adequately perform

13  any construction or home improvement at Plaintiff's property, that the surety on the bond would pay

14  Plaintiff.

15  146.   Defendant's surety bond was to be used to secure the proper performance of

16  Defendant's fiduciary duties.  Plaintiff and Defendants were in a special relationship, in which

17  Defendants acted as fiduciaries. Through this agreement; Defendant, SAFECO, as surety, agreed to

18  uphold the contractual promises made by the principal if the principal failed to uphold its promises

19  to Plaintiff.  The contract was formed so as to induce Plaintiff to contract with the principal, i.e., to

20  demonstrate the credibility of the principal and guarantee performance and completion per the terms

21  of the agreement.  Defendants' license bond was to secure the public trust and Defendant was a

22  fiduciary pursuant to the laws of the state of California in the performance of the contract.  Thus the

23  Defendants have a special relationship and special duties to Plaintiff to hold her interests in the

24  highest regard.

25  147.   Defendant have breached their duties owed to Plaintiff by unreasonable and wrongful

26  conduct and among other breaches and failures by:

27  a.   Failure to pay benefits as provided under the  Policy at a time when Defendants

28  knew that Plaintiff was entitled to said payment under the terms of the Policy;

1          b. Withholding payments from Plaintiff knowing Plaintiff's claim for benefits under

2  said Policy was valid;

3          c. Engaging in deceptive practices to limit valuation of Plaintiff's damage;

4          d. Engaging in deceptive practices to avoid payment for losses and damages by

5  restrictive interpretation of the Policy terms modified by the conduct, actions and inactions of

6  Defendant, SHIP;

7          e. Failing to completely, accurately and properly appraise and evaluate Plaintiff's

8  claims, to try to falsely limit or conceal Defendants' liability;

9          f. Failing to pay Plaintiff's claims at a time when Defendants had insufficient

10  information within their possession to justify such refusal;

11          g. Failing to reasonably and timely process Plaintiff's claims for benefits under the

12  Policy as designated herein;

13          h. Failing to acknowledge and act reasonably and promptly upon communications

14  from Plaintiff with respect to the repairs needed and claims arising under the Policy now the subject

15  of this Action;

16          i. Failing to adopt and implement reasonable standards for the prompt, accurate and

17  complete investigation and processing of Plaintiff's damage and claims.

18      148. Plaintiff brings this cause of action pursuant to Business & Professions Code §7071.11.

19  Plaintiff has complied with the provisions of Business & Professions Code §§7071.6 and 7071.11

20  relating to giving notice of Plaintiff's claim and demand for payment. Defendants failed to honor

21  the contract and up to the present time refuse to correct their error, mistake, and/or damage to

22  Plaintiff.

23      149. Plaintiff has made a demand to Defendant SAFECO for payment of the maximum

24  amount due under the license bond, but Defendant SAFECO has failed and refused, and continues

25  to fail and refuse, to pay same or any part thereof.

26      150. The statutory provisions incorporated into the Contractor's license bond require the

27  payment by Defendants, and each of them, of reasonable attorney's fees, which Plaintiff hereby

28  requests. As a further direct and proximate result of the aforementioned violation, Plaintiff has

1  suffered anxiety, worry, anger, mental and emotional distress, and other incidental damages and out

2  of pocket expenses, all to Plaintiff's general damage for a total amount to be shown at the time of

3  trial. Defendants' acts resulted in profit to Defendants. Plaintiff brings this action on her own behalf

4  and on behalf of all others similarly situated as private attorney general, and seeks restitution and

5  attorney's fees herein. The Defendants' conduct as described herein was undertaken with a conscious

6  disregard of Plaintiff's rights, based upon said Defendants' greed and superior bargaining power, and

7  with the intent to vex, injure and annoy Plaintiff so as to constitute malice, fraud or oppression

8  pursuant to California Civil Code §3294. Such conduct entitles Plaintiff to punitive damages in an

9  amount appropriate to deter such conduct and statutory damages pursuant to California Civil Code

10  §3345.

11  ## TWELFTH CAUSE OF ACTION

12  ## RECOVERY ON CONTRACTOR'S LICENSE BOND

13  ### (Against Defendants SHIP, SAFECO, and Does)

14     151.  Plaintiff repeats and realleges all paragraphs of the preceding allegations herein and

15  incorporates said paragraphs as though set forth in full in this Cause of Action.

16     152.   Defendant SHIP, as principle, and Defendant SAFECO, as surety, executed a

17  contractor's license bond for the purpose of complying with Business & Professions Code §§7071.5

18  and 7071.6 through 7084.  This bond in the sum of $12,500.00 was conditioned on, and provided

19  that if the original contractor, or any of its subcontractors, failed to complete, or adequately perform

20  any construction or home improvement at Plaintiff's property, that the surety on the bond would pay

21  Plaintiff.

22     153.   Defendant's surety bond was to be used to secure the proper performance of

23  Defendant's fiduciary duties.  Plaintiff and Defendants were in a special relationship, in which

24  Defendants acted as fiduciaries.  Through this agreement, Defendant SAFECO, as surety, agreed to

25  uphold the contractual promises made by the principal if the principal failed to uphold its promises

26  to Plaintiff.  The contract was formed so as to induce Plaintiff to contract with the principal, i.e., to

27  demonstrate the credibility of the principal and guarantee performance and completion per the terms

28  of the agreement.  Defendants' license bond was to secure the public trust and Defendant was a

fiduciary pursuant to the laws of the state of California in the performance of the contract. Thus the Defendants have a special relationship and special duties to Plaintiff to hold her interests in the highest regard.

154. Defendants have breached their duties owed to Plaintiff by unreasonable and wrongful conduct and among other breaches and failures by:

a. Failure to pay benefits as provided under the Policy at a time when Defendants knew that Plaintiff was entitled to said payment under the terms of the Policy;

b. Withholding payments from Plaintiff knowing Plaintiff's claim for benefits under said Policy was valid;

c. Engaging in deceptive practices to limit valuation of Plaintiff's damage;

d. Engaging in deceptive practices to avoid payment for losses and damages by restrictive interpretation of the Policy terms modified by the conduct, actions and inactions of Defendant, SHIP;

e. Failing to completely, accurately and properly appraise and evaluate Plaintiff's claims, to try to falsely limit or conceal Defendants' liability;

f. Failing to pay Plaintiff's claims at a time when Defendants had insufficient information within their possession to justify such refusal;

g. Failing to reasonably and timely process Plaintiff's claims for benefits under the Policy as designated herein;

h. Failing to acknowledge and act reasonably and promptly upon communications from Plaintiff with respect to the repairs needed and claims arising under the Policy now the subject of this Action;

i. Failing to adopt and implement reasonable standards for the prompt, accurate and complete investigation and processing of Plaintiff's damage and claims.

155. Plaintiff brings this cause of action pursuant to Business & Professions Code §7071.11. Plaintiff has complied with the provisions of Business & Professions Code §§7071.6 and 7071.11 relating to giving notice of Plaintiff's claim and demand for payment. Defendants failed to honor the contract and up to the present time refuse to correct their error, mistake, and/or damage to

1  Plaintiff.

2      156.  Plaintiff has made a demand to Defendant SAFECO for payment of the maximum

3  amount due under the license bond, but Defendant SAFECO has failed and refused, and continues

4  to fail and refuse, to pay same or any part thereof.

5      157.  The statutory provisions incorporated into the Contractor's license bond require the

6  payment by Defendants, and each of them, of reasonable attorney's fees, which Plaintiff hereby

7  requests. As a further direct and proximate result of the aforementioned violation, Plaintiff has

8  suffered anxiety, worry, anger, mental and emotional distress, and other incidental damages and out

9  of pocket expenses, all to Plaintiff's general damage for a total amount to be shown at the time of

10  trial. Defendants' acts resulted in profit to Defendants. Plaintiff brings this action on her own behalf

11  and on behalf of all others similarly situated as private attorney general, and seeks restitution and

12  attorney's fees herein. The Defendants' conduct as described herein was undertaken with a conscious

13  disregard of Plaintiff's rights, based upon said Defendants' greed and superior bargaining power, and

14  with the intent to vex, injure and annoy Plaintiff so as to constitute malice, fraud or oppression

15  pursuant to California Civil Code §3294. Such conduct entitles Plaintiff to punitive damages in an

16  amount appropriate to deter such conduct and statutory damages pursuant to California Civil Code

17  §3345.

18              **THIRTEENTH CAUSE OF ACTION**

19          **RECOVERY ON CONTRACTOR'S LICENSE BOND**

20          **(Against Defendants VILLANUEVA, ACIC, and Does)**

21      158.  Plaintiff repeats and realleges all paragraphs of the preceding allegations herein and

22  incorporates said paragraphs as though set forth in full in this Cause of Action.

23      159.  Defendant VILLANUEVA, as principle, and Defendant ACIC, as surety, executed a

24  contractor's license bond for the purpose of complying with Business & Professions Code §§7071.5

25  and 7071.6 through 7084.  This bond in the sum of $12,500.00 was conditioned on, and provided

26  that if the original contractor, or any of its subcontractors, failed to complete, or adequately perform

27  any construction or home improvement at Plaintiff's property, that the surety on the bond would pay

28  Plaintiff.

160.   Defendant's surety bond was to be used to secure the proper performance of Defendant's fiduciary duties.  Plaintiff and Defendants were in a special relationship, in which Defendants acted as fiduciaries.  Through this agreement, Defendant ACIC, as surety, agreed to uphold the contractual promises made by the principal if the principal failed to uphold its promises to Plaintiff.  The contract was formed so as to induce Plaintiff to contract with the principal, i.e., to demonstrate the credibility of the principal and guarantee performance and completion per the terms of the agreement.  Defendants' license bond was to secure the public trust and Defendant was a fiduciary pursuant to the laws of the state of California in the performance of the contract.  Thus the Defendants have a special relationship and special duties to Plaintiff to hold her interests in the highest regard.

161.   Defendants have breached their duties owed to Plaintiff by unreasonable and wrongful conduct and among other breaches and failures by:

a.   Failure to pay benefits as provided under the  Policy at a time when Defendants knew that Plaintiff was entitled to said payment under the terms of the Policy;

b.   Withholding payments from Plaintiff knowing Plaintiff's claim for benefits under said Policy was valid;

c.   Engaging in deceptive practices to limit valuation of Plaintiff's damage;

d.   Engaging in deceptive practices to avoid payment for losses and damages by restrictive interpretation of the Policy terms modified by the conduct, actions and inactions of Defendant, VILLANUEVA;

e.   Failing to completely, accurately and properly appraise and evaluate Plaintiff's claims, to try to falsely limit or conceal Defendants' liability;

f.   Failing to pay Plaintiff's claims at a time when Defendants had insufficient information within their possession to justify such refusal;

g.   Failing to reasonably and timely process Plaintiff's claims for benefits under the Policy as designated herein;

h.   Failing to acknowledge and act reasonably and promptly upon communications from Plaintiff with respect to the repairs needed and claims arising under the Policy now the subject

37
COMPLAINT

1   of this Action;

2              i. Failing to adopt and implement reasonable standards for the prompt, accurate and

3   complete investigation and processing of Plaintiff's damage and claims.

4         162. Plaintiff brings this cause of action pursuant to Business & Professions Code §7071.11.

5   Plaintiff has complied with the provisions of Business & Professions Code §§7071.6 and 7071.11

6   relating to giving notice of Plaintiff's claim and demand for payment. Defendants failed to honor

7   the contract and up to the present time refuse to correct their error, mistake, and/or damage to

8   Plaintiff.

9         163. Plaintiff has made a demand to Defendant ACIC for payment of the maximum amount

10  due under the license bond, but Defendant ACIC has failed and refused, and continues to fail and

11  refuse, to pay same or any part thereof.

12        164. The statutory provisions incorporated into the Contractor's license bond require the

13  payment by Defendants, and each of them, of reasonable attorney's fees, which Plaintiff hereby

14  requests. As a further direct and proximate result of the aforementioned violation, Plaintiff has

15  suffered anxiety, worry, anger, mental and emotional distress, and other incidental damages and out

16  of pocket expenses, all to Plaintiff's general damage for a total amount to be shown at the time of

17  trial. Defendants' acts resulted in profit to Defendants. Plaintiff brings this action on her own behalf

18  and on behalf of all others similarly situated as private attorney general, and seeks restitution and

19  attorney's fees herein. The Defendants' conduct as described herein was undertaken with a conscious

20  disregard of Plaintiff's rights, based upon said Defendants' greed and superior bargaining power, and

21  with the intent to vex, injure and annoy Plaintiff so as to constitute malice, fraud or oppression

22  pursuant to California Civil Code §3294. Such conduct entitles Plaintiff to punitive damages in an

23  amount appropriate to deter such conduct and statutory damages pursuant to California Civil Code

24  §3345.

25                  **FOURTEENTH CAUSE OF ACTION**

26        **VIOLATION OF THE UNRUH ACT, CIVIL CODE §51, *ET SEQ.***

27         **(Against Defendants, SHIP, ELIA, VILLANUEVA, and Does)**

28        165. Plaintiff repeats and realleges all paragraphs of the preceding allegations herein and

1  incorporates said paragraphs as though set forth in full in this Cause of Action.

2      166.  Defendants conduct stated herein, in the causes of action above and in the factual

3  background at pages 1 through 18, is in violation of fundamental public policies of the State of

4  California with respect to <u>Civil Code</u> §51 *et seq.*, in that it denied Plaintiff the full and equal access

5  to goods and services furnished by Defendants to which she was entitled pursuant to the Unruh Civil

6  Rights Act, <u>Civil Code</u> §51, *et seq.*

7      167.  Defendants' wrongful conduct caused Plaintiff to suffer injuries and damages described

8  herein, and in the previous causes of action.  Accordingly, Plaintiff is entitled to all the relief and

9  remedies afforded by <u>Civil Code</u> §51 *et seq.*, including *inter alia* general damages, exemplary and

10 punitive damages, a civil penalty of $25,000 attorney' fees, and injunctive and other equitable relief

11 against Defendants.  As a further direct and proximate result of the aforementioned violation,

12 Plaintiff has suffered anxiety, worry, anger, mental and emotional distress, and other incidental

13 damages and out of pocket expenses, all to Plaintiff's general damage for a total amount to be shown

14 at the time of trial.  Defendants' acts resulted in profit to Defendants.  Plaintiff brings this action on

15 her own behalf and on behalf of all others similarly situated as private attorney general, and seeks

16 restitution and attorney's fees herein. The Defendants' conduct as described herein was undertaken

17 with a conscious disregard of Plaintiff's rights, based upon said Defendants' greed and superior

18 bargaining power, and with the intent to vex, injure and annoy Plaintiff so as to constitute malice,

19 fraud or oppression pursuant to <u>California Civil Code</u> §3294.  Such conduct entitles Plaintiff to

20 punitive damages in an amount appropriate to deter such conduct and statutory damages pursuant

21 to <u>California Civil Code</u> §3345.

22                     **FIFTEENTH CAUSE OF ACTION**

23                **VIOLATION OF THE TRUTH IN LENDING ACT**

24                     **(Against Defendant CITI, and Does)**

25      168.  Plaintiff repeats and realleges all paragraphs of the preceding allegations herein and

26 incorporates said paragraphs as though set forth in full in this Cause of Action.

27      169.  Defendant CITI us engaged in the business of extending consumer credit for which a

28 finance charge is or may be imposed or which, by written agreement, is payable in more than four

1  installments, and is the entity to whom the transaction which is the subject of this action is initially

2  payable, making Defendant CITI a creditor subject to the Truth in Lending Act.

3      170.  Defendant CITI breached its duties to Plaintiff under the Truth in Lending Act by,

4  among other things, failing to provide Plaintiff with the required disclosures prior to consummation

5  of the transaction, and failing to make required disclosures clearly and conspicuously in writing.

6      171.  Defendants' wrongful conduct caused Plaintiff to suffer injuries and damages described

7  herein, and in the previous causes of action.  Accordingly, Plaintiff is entitled to all the relief and

8  remedies afforded by statute, including *inter alia* general damages, exemplary and punitive damages,

9  statutory penalties, attorneys' fees and costs against Defendants. As a further direct and proximate

10  result of the aforementioned violation, Plaintiff has suffered anxiety, worry, anger, mental and

11  emotional distress, and other incidental damages and out of pocket expenses, all to Plaintiff's general

12  damage for a total amount to be shown at the time of trial.  Defendants' acts resulted in profit to

13  Defendants.  Plaintiff brings this action on her own behalf and on behalf of all others similarly

14  situated as private attorney general, and seeks restitution and attorney's fees herein. The Defendants'

15  conduct as described herein was undertaken with a conscious disregard of Plaintiff's rights, based

16  upon said Defendants' greed and superior bargaining power, and with the intent to vex, injure and

17  annoy Plaintiff so as to constitute malice, fraud or oppression pursuant to California Civil Code

18  §3294.  Such conduct entitles Plaintiff to punitive damages in an amount appropriate to deter such

19  conduct and statutory damages pursuant to California Civil Code §3345.

20      **WHEREFORE**, Plaintiffs pray for judgment against the Defendants, and each of them, as

21  follows:

22      1. General damages for mental and emotional distress and other incidental damages in a sum

23  to be determined at the time of trial, according to proof;

24      2.  Special damages, consequential and incidental expenses incurred, and all additional

25  economic losses proximately caused by Defendants' acts and/or omissions, according to proof;

26      3.  Restitution and disgorgement of profits;

27      4.  Punitive or exemplary damages in an amount appropriate to punish or set an example of

28  the Defendants, relative to the applicable causes of action.

5. Prejudgment interest at the legal rate, according to law;

6. Attorneys' fees, as may be allowed by law;

7. Costs of suit incurred herein; and,

8. Such other and further relief as this court deems just and proper.

DATED: July 2, 2010

Gary Rand & Suzanne E. Rand-Lewis, PLC's

BY: _____

Suzanne E. Rand-Lewis
Attorney for Plaintiffs